# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Peter Maggio, *et al.*　　　　　　　＊
　　　　　　　　　　　　　　　　　＊　　Civil Action No. CCB-19-1939
　　　v.　　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　　　＊
Cenlar FSB　　　　　　　　　　　　＊

## MEMORANDUM

Peter Hunt Maggio and Sarah Maggio (the "Maggios") allege that Cenlar FSB ("Cenlar") acted improperly with respect to sending the Maggios a final loan modification agreement. Cenlar has filed a motion to dismiss, which has been fully briefed, and no oral argument is necessary. For the reasons stated below, the motion will be granted in part and denied in part.

## FACTS

The Maggios own a property located at 7120 Morning Light Trail in Columbia, MD, and this property is their primary residence. (Am. Compl. ¶ 1). Cenlar holds the first mortgage on the property. (*Id.* ¶ 2). On or about November 16, 2014, Cenlar filed a foreclosure action against the property. (*Id.* ¶ 3). In May 2017, Cenlar granted the Maggios a 3-month trial loan modification (the "TPP"), in which the Maggios would make modified loan payments. (*Id.* ¶ 4). If the Maggios completed the TPP, Cenlar would provide the Maggios with a permanent loan modification. (*Id.*). As part of the process of obtaining the TPP and being approved for the final loan modification, the Maggios were required to provide documentation of income and expenses and complete a financial statement reflecting all income, expenses and assets. (*Id.*). The Maggios timely made the three trial payments in June, July, and August 2017 and satisfied all necessary conditions to complete the TPP and receive the final loan modification. (*Id.* ¶ 5).

1

By September 2017, the Maggios had not yet received the final loan modification agreement, so Peter Maggio contacted Cenlar and an agent told them that the final loan modification agreement had been sent to the Maggios via Federal Express and left on the doorstep of the property. (*Id.* ¶¶ 7–8). Peter Maggio told the agent that he never received the final agreement, and the agent stated he would resend it. (*Id.* ¶ 9). The agent also provided Maggio a tracking number for the delivery. (*Id.* ¶ 10). The final agreement never arrived and when Maggio tracked the passage, the Federal Express website showed that Cenlar had never delivered the package to Federal Express. (*Id.* ¶¶ 11–12). Maggio called Cenlar again, but this time Cenlar refused to resend the final loan modification agreement, instead scheduling a foreclosure sale for November 6, 2017. (*Id.* ¶¶ 13–15).

The Maggios filed for Chapter 7 Bankruptcy on November 6, 2017. (ECF 14-1 at 59, Bankruptcy Court Docket).[1] That case was dismissed on March 26, 2018, for failure to provide certain documents. (ECF 14-1 at 71, Order Dismissing Case). The Maggios then filed for Chapter 13 Bankruptcy on May 23, 2018. (ECF 14-1 at 74, Bankruptcy Court Docket; *see also* ECF 20-2 (same)).

The Maggio filed a complaint in the Circuit Court for Howard County, Maryland, on May 3, 2019. (ECF 2). Cenlar removed the case to this court on July 1, 2019. (ECF 1). The Maggios amended their complaint on August 7, 2019. (ECF 13). The Maggios bring claims for

---

[1] Cenlar attached to its motion to dismiss the docket sheets for the Maggios' Chapter 7 and Chapter 13 Bankruptcy filings, and the Maggios attached to their opposition the docket sheet for their Chapter 13 Bankruptcy filing. In reviewing a Rule 12(b)(6) motion to dismiss, the court may "consider documents incorporated into the complaint by reference . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (internal quotation marks and citations omitted); *see also Brown v. Ocwen Loan Servicing, LLC*, No. CIV. PJM 14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), aff'd, 639 F. App'x 200 (4th Cir. 2016) ("A court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment."). As there has been no objections to considering these docket sheets, the court will do so.

1) violation of the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401, *et seq.* (Count I); 2) negligence (Count II); 3) violation of the Maryland Consumer Protection Act ("MCPA"), Com. Law, § 14-201, *et seq.* (Count III); and 4) breach of contract (Count IV).

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

Allegations of fraud must be pled with particularity. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

## DISCUSSION

I. Maryland Mortgage Fraud Protection Act and Maryland Consumer Protection Act (Counts I and III)

The MMFPA prohibits mortgage fraud, which includes "[k]nowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process." Md. Code Ann., Real Prop. § 7-401. Courts in this district have held that "[t]o state an MMFPA claim, the plaintiff 'must plead the elements of a common law fraud claim.'" *Barr v. Flagstar Bank*, *FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (quoting *Galante v. Ocwen Loan Servicing LLC*, No. CIV.A. ELH-13-1939, 2014 WL 3616354, at *28 (D. Md. July 18, 2014)). To state a claim for fraudulent misrepresentation, a plaintiff must allege:

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 273 (D. Md. 2015) (quoting *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 530 (D. Md. 2013)).

The MCPA prohibits "[u]nfair, abusive, or deceptive trade practices." Md. Code Ann., Com. Law § 13-301. "A private party bringing a claim under § 13-408 of the MCPA [which provides a private cause of action] must allege '(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury.'" *Ayres*, 129 F. Supp. 3d at 270 (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)).[2]

---

[2] Because the MCPA and MMFPA claims sound in fraud, they are subject to Rule 9(b)'s heightened pleading standard. *Ayres*, 129 F. Supp. 3d at 270, 273.

The Maggios argue that Cenlar's representations that they had sent, and would resend, the final loan modification agreement to the Maggios were fraudulent. (Am. Compl. ¶¶ 19, 32). According to the amended complaint, the Maggios relied on the fraudulent statements by not immediately filing for Chapter 13 Bankruptcy, so by the time they knew that Cenlar had no intention of providing the final modification agreement, they lost the ability to save their home.[3] (*Id.* ¶¶ 21, 35–36).

The Maggios have not adequately pled reliance. According to the amended complaint, the Maggios learned sometime before November 6, 2017, that Cenlar would not be sending the final loan modification agreement. (*Id.* ¶ 14 (Cenlar refused to send the final agreement), ¶ 15 (instead, Cenlar scheduled a foreclosure sale for November 6, 2017). Yet, the Maggios did not file for Chapter 13 Bankruptcy until May 2018. (ECF 20-2, Chapter 13 Bankruptcy Docket). "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013). Here, the Maggios have not plausibly alleged that the alleged misrepresentations substantially induced their choice to delay filing Chapter 13 Bankruptcy, because they did not file for over six months after they knew Cenlar would not send the agreement.[4]

*Allen v. CitiMortgage, Inc.*, which the Maggios cite to, is distinguishable. There, the Allens were given a series of letters from their mortgage company that led them to believe they could pay a modified monthly payment on their mortgage. No. CIV. CCB-10-2740, 2011 WL

---

[3] The Maggios filed for Chapter 7 Bankruptcy in November 2017. The Maggios make clear in their opposition, though, that their reliance and injury argument is that they delayed in filing Chapter 13 Bankruptcy.

[4] According to the amended complaint, "[t]he Maggios relied on these false statements by, among other things, not immediately filing a Chapter 13 Bankruptcy so that by the time it became clear that Cenlar had no intention of providing the final loan modification documentation, the Maggios were not in a position to save the home through a Chapter 13 Bankruptcy." (Am. Compl. ¶ 21 (MMFPA claim); *see also id.* ¶ 35 ("The Maggios had a right to rely on these statements and did rely on them by, among other things, not immediately filing a Chapter 13 Bankruptcy[.]") (MCPA claim)). To the extent that the Maggios allege other reliance in addition to not immediately filing a Chapter 13 Bankruptcy, it has not been sufficiently pled.

3425665, at *2 (D. Md. Aug. 4, 2011). This led CitiMortgage to report the Allens as late on their mortgage payments, *id.* at *2, causing damage to the Allen's credit score, and "forgone alternative legal remedies." *Id.* at *10. While the Maggios may have "forgone alternative legal remedies" by waiting to file Chapter 13 Bankruptcy, there is no indication that this was because of Cenlar's alleged misrepresentations, which the Maggios allegedly learned were false six months prior.

Similarly, in regards to the Maggios' other allegations of damages — fees added onto their mortgage, fees relating to defending the foreclosure action, and emotional distress, *see* Am. Compl. ¶¶ 28, 36) — "the absence of any clear reliance by Plaintiffs on Defendant's misrepresentations make the causal connection between any misconduct and [the alleged damages] too tenuous." *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 256 (D. Md. 2013), aff'd, 582 F. App'x 246 (4th Cir. 2014). Finally, the Maggios also allege damages of incurring attorney's fees to file multiple bankruptcies. (Am. Compl. ¶ 28). To the extent that the Maggios argue that they initially filed a Chapter 7 Bankruptcy instead of a Chapter 13 Bankruptcy because of the alleged misrepresentations that Cenlar was sending the final loan modification agreement, this is contradicted by the amended complaint and the date of the bankruptcy filing. The Maggios filed for Chapter 7 Bankruptcy on November 6, 2017, (ECF 14-1 at 59), the same day that Cenlar scheduled the foreclosure sale and apparently after Cenlar had refused to send the final loan modification, (Am. Compl. ¶¶ 14, 15 (Cenlar refused to send final agreement and instead scheduled foreclosure sale for November 6, 2017)). Therefore, at the time the Maggios chose to file Chapter 7 Bankruptcy, they knew that Cenlar would not send the final modification agreement, so the alleged misrepresentation could not have influenced their decision to file Chapter 7 instead of Chapter 13 Bankruptcy.

Therefore, the court will dismiss Count I (violation of MMFPA) and Count III (violation of MCPA).

II.  Negligence

To state a claim for negligence, the plaintiff must allege, *inter alia*, that the defendant owed a duty to the plaintiff. *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531 (1986). "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent." *Id.* at 534–35. "It is well established in Maryland that the relationship between the bank and borrower is contractual, not fiduciary, in nature. . . . Absent special circumstances, the court is reluctant to 'transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement.'" *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 620 (D. Md. 2012), aff'd, 714 F.3d 769 (4th Cir. 2013) (quoting *Parker v. Columbia Bank*, 91 Md. App. 346, 369 (Md. Ct. Spec. App. 1992).

Courts in this district have rejected the argument that a lender owes a duty to the borrower with respect to the loan modification process. *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012) ("This Court agrees with every other court to consider the issue that the HAMP[5] loan modification process does not create the 'special circumstances' required to form a tort duty under Maryland law," and collecting cases); *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 208 (D. Md. 2012) ("Courts have consistently held that HAMP does not create *Jacques* duties, and there is, therefore, no duty in this case."). The Maggios argue that

---

[5] The Home Affordable Modification Program ("HAMP") was a federal program that provided funding incentives to loan servicers who agreed to modify their borrowers' loans. *Legore*, 898 F. Supp. 2d at 914. The parties do not state that Cenlar offered the opportunity for loan modification pursuant to HAMP.

7

these cases are distinguishable, because *Legore* and *Farasat* "involved the processing of a HAMP loan modification application that had never progressed to the point of there even being a TPP, let alone a final permanent loan modification such as the case here." Even if the Maggios were in contractual privity with Cenlar, however, a "contractual obligation, by itself, does not create a tort duty." *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 654 (1999) (citation omitted); *Ramos v. Bank of Am., N.A.*, No. CIV.A. DKC 11-3022, 2012 WL 1999867, at *5 (D. Md. June 4, 2012)[6] ("Assuming Ms. Ramos attempts to pursue a negligence claim by alleging that Defendants owed her a duty of care arising out of the TPP, she must identify a duty separate from that imposed by the putative TPP contract itself."). The Maggios must allege special circumstances that would justify a tort duty. *See Parker,* 91 Md. App. at 370–71 (reviewing special circumstances that might make tort duty appropriate).

Here, the Maggios have not sufficiently alleged special circumstances comparable to those in *Jacques.* Rather, "this case presents a typical, arm's-length creditor/debtor relationship founded on a mortgage loan." *Currie*, 950 F. Supp. 2d at 803. It is true that the Maggios were in a vulnerable position with respect to Cenlar, as Cenlar held the mortgage on their home and initiated foreclosure proceedings. But here, unlike in *Jacques*, the Maggios were already in foreclosure prior to the loan modification opportunity, and "were threatened with the loss of their home prior to any alleged negligence by" Cenlar. *See Green*, 927 F. Supp. 2d at 253. Therefore, "[w]hile it is likely true that Plaintiffs were vulnerable due to the pending foreclosure action, that vulnerability related to factors independent of their request for loan modification." *Id.* Therefore, the Maggios have not sufficiently pled a tort duty, and the court will dismiss Count II, the claim for negligence.

---

[6] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

III.     Breach of Contract

To state a claim for breach of contract under Maryland law, a plaintiff must establish that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). The Maggios argue that after they completed the TPP requirements, Cenlar agreed to permanently modify the Maggios' mortgage, but then breached this agreement by failing to send the Maggios the final loan modification agreement. (Am. Compl. ¶¶ 38–39). Cenlar argues that they did send a final loan modification offer and the Maggios did not allege a provision of the TPP that required Cenlar to resend the modification offer.[7]

First, whether Cenlar sent the final loan modification agreement is a question of fact not appropriate for resolution at the motion to dismiss stage. Although Cenlar provides a copy of a delivery confirmation from FedEx that mail was sent from Dallas, TX, to Columbia, MD, (ECF 14-1 at 55), nothing on the confirmation indicates that this relates to the sending of the modification agreement (e.g., the Maggios' address is not on the confirmation), and regardless, this is not the type of document the court should consider on a motion to dismiss. *C.f. Oberg*, 745 F.3d at 136 (in reviewing a motion to dismiss courts can consider documents incorporated into the complaint and those integral to the complaint and authentic).

Second, the Maggios have sufficiently alleged, at this stage, that Cenlar had an obligation to resend the final modification agreement once the first one was not received. While the TPP agreement does not appear to be in the record, the Maggios allege that the agreement was that if the Maggios completed the TPP, "Cenlar would provide the Maggios with a permanent loan modification." (Am. Compl. ¶ 4). There is no indication that the Maggios did not fulfill their

---

[7] Cenlar appears to assume, at least for the purposes of the motion to dismiss, that the TPP was a contract between the parties.

9

obligations under the TPP.  This sufficiently alleges that Cenlar had an obligation to provide the permanent loan modification agreement to the Maggios, which could include resending the agreement.

The cases that Cenlar cites to are distinguishable, as in those cases it appears the mortgagee did not have an obligation to permanently modify the loan because the homeowners did not meet all requirements for modification.  *Taylor v. M&T Bank*, No. CV RDB-17-2434, 2017 WL 6422374, at *2 (D. Md. Sept. 25, 2017), aff'd, 712 F. App'x 306 (4th Cir. 2018) (plaintiff did not maintain clear title, which was a requirement for permanent modification); *White v. JPMorgan Chase Bank, N.A.*, No. CIV.A. GLR-12-3591, 2013 WL 3071894, at *4 (D. Md. June 17, 2013) (finalization of loan modification was conditional and plaintiff did not meet a requirement for modification).  Here, the Maggios allege they did meet all the requirements for loan modification (and it appears they did, because Cenlar states that it sent a final loan modification to them).  Therefore, the Maggios have plausibly alleged a claim for breach of contract.[8]

## CONCLUSION

For these reasons, the court will grant in part and deny in part Cenlar's motion to dismiss.  The court will dismiss Counts I (MMFPA violation), II (negligence), and III (MCPA violation).  The court will deny the motion to dismiss with respect to Count IV, breach of contract.  A separate order follows.

|   3/23/20   | /s/ |
|---|---|
| Date | Catherine C. Blake |
| | United States District Judge |

---

[8] Because the court finds that the Maggios have sufficiently alleged an obligation for Cenlar to provide the final loan modification agreement to the Maggios, which could include resending the agreement, the court does not address the Maggios' alternative argument that the oral promise to resend the loan obligation was an enforceable oral contract.